(887 P.2d 147)
No. 71,629

JAMES PAYNE, *Appellant*, v. KANSAS PAROLE BOARD, *et al.*,
*Appellees*.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Opinion filed December 22, 1994. ▮▮▮▮▮▮

*Michael C. Robinson,* of Branine, Chalfant & Hill, of Hutchinson, for appellant.

*John J. Knoll,* assistant attorney general, and *Robert T. Stephan,* attorney general, for appellee.

Before BRAZIL, P.J., GERNON, J., and JAMES J. SMITH, District Judge, assigned.

BRAZIL, J.: James Payne appeals from the dismissal of his petition for writ of habeas corpus. Payne challenged a Kansas Parole Board (KPB) decision which denied him parole. We affirm.

In 1975, Payne was convicted upon his guilty pleas of one count of first-degree murder, one count of kidnapping, and one count of unlawful possession of a firearm. It is unclear from the record what sentence was imposed upon his convictions; however, Payne alleged in his petition that pursuant to K.S.A. 1993 Supp. 22-3717(b), he was required to serve 15 years before becoming eligible for parole. In 1988, Payne entered into an inmate program agreement with the Kansas Department of Corrections pursuant to K.S.A. 1993 Supp. 75-5210a. He successfully completed the program agreement prior to the KPB's initial review of his case in 1990.

The KPB denied Payne's applications for parole in 1990 and 1993. It will next review Payne's case in 1996.

Payne first argues that K.S.A. 1993 Supp. 75-5210a is an ex post facto law as applied to him. That statute provides in part:

"(a) Within a reasonable time after a defendant is committed to the custody of the secretary of corrections, the secretary shall enter into a written agreement with the inmate specifying those educational, vocational, mental health or other programs which the secretary determines the inmate must satisfactorily complete in order to be prepared for release on parole or postrelease supervision. To the extent practicable, the agreement shall require the inmate to have made progress towards or to have successfully completed the equivalent of a secondary education before release on parole if the inmate has not previously completed such educational equivalent and is capable of doing so. The agreement shall be conditioned on the inmate's satisfactory conduct, employment and attitude while incarcerated. If the secretary determines that the inmate's conduct, employment, attitude or needs require modifications or additions to those programs which

are set forth in the agreement, the secretary shall revise the requirements. The secretary shall agree that, when the inmate satisfactorily completes the programs required by the agreement, or any revision thereof, the secretary shall report that fact in writing to the Kansas parole board. If the inmate becomes eligible for parole or entitled to postrelease supervision before satisfactorily completing such programs, the secretary shall report in writing to the Kansas parole board the programs which are not completed."

The Secretary of Corrections implements and monitors inmate program agreements. Program agreements become important when the KPB reviews an inmate's case to determine if it should grant or deny parole. K.S.A. 1993 Supp. 22-3717(g) provides:

"(g) Subject to the provisions of this section, the Kansas parole board may release on parole those persons confined in institutions who are eligible for parole when: (1) The board believes that the inmate should be released for hospitalization, for deportation or to answer the warrant or other process of a court and is of the opinion that there is reasonable probability that the inmate can be released without detriment to the community or to the inmate; or (2) the secretary of corrections has reported to the board in writing that the inmate has satisfactorily completed the programs required by any agreement entered under K.S.A. 75-5210a and amendments thereto, or any revision of such agreement, and the board believes that the inmate is able and willing to fulfill the obligations of a law abiding citizen and is of the opinion that there is reasonable probability that the inmate can be released without detriment to the community or to the inmate."

In other words, for inmates who are not eligible for parole under K.S.A. 1993 Supp. 22-3717(g)(1), successful completion of a program agreement is required before the KPB may grant parole.

The provisions of K.S.A. 1993 Supp 75-5210a, which direct the Secretary of Corrections to enter into program agreements with inmates, and K.S.A. 1993 Supp. 22-3717(g)(2), which condition the KPB's ability to grant parole upon successful completion of a program agreement, were originally enacted in 1988. L. 1988, ch. 115, §§ 1, 6. Payne contends those provisions violate the United States Constitution's ban on ex post facto laws found at U.S. Const., art. I, § 10 as they apply to him because the offense for which he was convicted occurred prior to 1988.

Payne's appeal on this issue raises a question of statutory interpretation, which is a question of law. See *Todd v. Kelly*, 251 Kan. 512, 515, 837 P.2d 381 (1992). This court has unlimited review over questions of law.

For a criminal or penal law to be ex post facto it must be retrospective; that is, it must apply to events occurring prior to its enactment and it must disadvantage the offender affected by it. *Lamb v. Kansas Parole Board*, 15 Kan. App. 2d 606, 610, 812 P.2d 761 (1991). A statute operates prospectively unless its language clearly indicates that the legislature intended it to operate retroactively. *State v. Sutherland*, 248 Kan. 96, 106, 804 P.2d 970 (1991). An exception to this rule is that if the statutory change does not prejudicially affect the substantive rights of the parties and is merely procedural or remedial in nature, it applies retroactively. Thus, this issue becomes whether the statute is substantive criminal law which either defines a crime or involves the length or type of punishment. 248 Kan. at 106.

The language of K.S.A. 1993 Supp. 75-5210a directs the Secretary of Corrections to enter into program agreements only with newly committed inmates. In addition, because successful completion of a program agreement was not a prerequisite for parole prior to the 1988 enactments, these provisions impose new requirements for parole eligibility and, thus, cannot be considered merely procedural. For these reasons, K.S.A. 1993 Supp. 75-5210a and K.S.A. 1993 Supp. 22-3717(g)(2) do not apply retroactively and, therefore, do not violate the ban on ex post facto laws.

Despite the fact that K.S.A. 1993 Supp. 75-5210a does not apply retroactively, Payne entered into a program agreement with the Secretary of Corrections in 1988 in which he agreed to earn a G.E.D. and attend mental health and substance abuse counseling. Payne successfully completed the programs included in the agreement and now complains that he was coerced into entering the agreement based upon the Secretary's representation that his parole eligibility would be adversely affected if he refused. While these allegations may be true, the remedy he requests, a new hearing before the KPB, is not warranted.

It is unclear what, if any, remedy would be appropriate to address the Secretary's erroneous application of 75-5210a to Payne and other inmates whose crimes were committed prior to enactment of L. 1988, ch. 115, § 6. However, the KPB did not pass

Payne for parole because of his performance under the program agreement. Additionally, the allegations in Payne's petition do not indicate that he has suffered any adverse consequences as a result of earning his G.E.D. and receiving mental health and substance abuse counseling pursuant to the program agreement. For these reasons, it is not necessary to remand the matter to the KPB for a new parole hearing as requested in Payne's petition.

Payne also argues that the KPB breached the program agreement because it failed to parole him even though he had successfully completed his program agreement. It should be noted that the Secretary of Corrections enters into and monitors program agreements, not the KPB. Therefore, there can be no claim that the KPB breached the program agreement.

Payne contends language contained in the initial program agreement constituted a promise that he would be paroled upon successful completion of the programs included in the agreement and that the agreement was breached when he was denied parole. Payne did not provide a copy of the original program agreement. However, he did provide a copy of an amended program agreement which contained the following acknowledgement.

"I acknowledge that I have been afforded an opportunity to enter into a program agreement. I understand that my parole release is, in part, contingent upon my satisfactory completion of the programs included in my program agreement. I understand that if I decline to enter into a program agreement or to participate in programs included in the program agreement, such action will likely have an adverse affect on my chance to be granted parole."

Clearly, the excerpted provision of the agreement is incorrect in that it suggests Payne's parole eligibility is contingent upon completion of the programs included in the agreement. Because K.S.A. 1993 Supp. 75-5210a and K.S.A. 1993 Supp. 22-3717(g)(2) do not apply retroactively, Payne's parole eligibility was not contingent upon successful completion of the program agreement. However, the excerpted provision does not constitute a promise that Payne would be granted parole upon completion of the program agreement. It clearly states "I understand that my parole release is, *in part*, contingent upon my satisfactory completion of the programs included in my program agreement." (Emphasis added.)

In addition, the Secretary of Corrections has no authority to promise that an inmate will be granted parole. The KPB has sole authority to grant or deny parole and is vested with broad discretion in how it determines if an inmate will be paroled. K.S.A. 1993 Supp. 75-5210a(a) indicates the sole obligation of the Secretary of Corrections upon entering into a program agreement is to inform the KPB that an inmate has completed the programs included in the agreement.

Though Payne's petition alleges that his program agreement contained language which incorrectly suggested his parole eligibility would depend in part upon completion of the agreement, this does not warrant remanding the matter for a new hearing before the KPB. The KPB did not pass Payne for parole because of his performance under the program agreement. Even if K.S.A. 1993 Supp. 22-3717(g)(2) applied to Payne, the KPB is not required to grant parole upon successful completion of a program agreement. K.S.A. 1993 Supp. 22-3717(g)(2), (k). Rather, the final determination is in the discretion of the KPB. The only instance in which the KPB must grant parole is in the limited circumstance where it has, in the past, denied parole "only because of a failure to satisfactorily complete" some or all of the programs included in a program agreement. K.S.A. 1993 Supp. 22-3717(k). In this situation, the KPB "shall grant parole upon the secretary's certification that the inmate has successfully completed such programs." K.S.A. 1993 Supp. 22-3717(k).

Finally, Payne argues that the KPB did not offer sufficient reasons for denying his parole. The trial court determined that the KPB articulated sufficient reasons to justify denying parole for Payne and dismissed the habeas corpus petition for failure to state a claim for which relief could be granted. Payne alleges that his petition did state a claim for which relief could be granted. He alleges that the provisions of K.S.A. 1993 Supp. 75-5210a and K.S.A. 1993 Supp. 22-3717 concerning program agreements create a liberty interest in being granted parole upon completion of a program agreement. Interestingly, this argument seems to contradict his initial argument that K.S.A. 1993 Supp. 22-3717 was an ex post facto law.

First, whether the provisions of K.S.A. 1993 Supp. 22-3717 and K.S.A. 1993 Supp. 75-5210a concerning inmate program agreements create a liberty interest is not relevant here because those provisions do not apply retroactively to Payne. Second, as discussed above, the only situation in which the KPB is required to grant parole under the current parole statutes is when it has denied parole on a prior occasion solely because of an inmate's failure to complete a program agreement and is informed by the Secretary of Corrections that the inmate has subsequently completed the program agreement. K.S.A. 1993 Supp. 22-3717(k).

The KPB denied parole in 1990 (1) because it did not feel that Payne was ready and able to assume the obligations of a law-abiding citizen, (2) because of the serious nature of the crime for which he was convicted, and (3) because individuals had objected at the parole hearing. In 1993, the KPB offered similar reasons, including the serious and violent nature of the crime and individual objections. Payne was not denied parole because he failed to complete a program agreement.

A habeas corpus action is the appropriate procedure for reviewing decisions of the parole board. However, because parole is a privilege, a matter of grace exercised by the KPB, this court's review of the denial of parole is limited to whether the KPB complied with applicable statutes and whether its action was arbitrary and capricious. *Lamb v. Kansas Parole Board*, 15 Kan. App. 2d 606, Syl. ¶ 3.

Payne does not deny that he received notice of the reasons why he was denied parole. The reasons given by the KPB for its denial of parole are consistent with those approved by the Supreme Court in *Gilmore v. Kansas Parole Board*, 243 Kan. 173, 756 P.2d 410, *cert. denied* 488 U.S. 930 (1988). The circumstances of the offense of the inmate and the comments of the victim, the victim's family, and the public are specifically listed as factors which the KPB must consider at the parole hearing. K.S.A. 1993 Supp. 22-3717(h)(2). Here, the KPB offered specific reasons for denying parole and in so doing complied with K.S.A. 1993 Supp. 22-3717(k), which requires the KPB to state in detail specific reasons for not granting parole.

Where it appears beyond a doubt that a petitioner can prove no set of facts which would entitle the petitioner to relief, a trial court may summarily dismiss a habeas corpus petition for failure to state a claim for which relief could be granted. *Shepherd v. Davies,* 14 Kan. App. 2d 333, 335, 789 P.2d 1190 (1990). Payne's petition did not allege any facts upon which the trial court could grant Payne the relief requested. The trial court did not err in summarily dismissing the petition.

Affirmed.