(941 P.2d 952)

No. 76,543

FRANCIS NEMECHEK, *Appellee*, v. DAVID R. MCKUNE,
*et al., Appellants.*

Opinion filed June 27, 1997.

*Jeff Cowger*, special assistant attorney general, for appellants.

*Bruce C. Hedrick*, of Legal Services for Prisoners, Inc., of Lansing, for appellee.

Before GERNON, P.J., RULON, J., and JAMES L. BURGESS, District Judge, assigned.

RULON, J.: Respondents David R. McKune, *et al.*, appeal the district court's grant of relief to a habeas corpus petition concerning a prisoner's refusal to participate in prison rehabilitative programs. We reverse.

The facts here are undisputed and are as follows:

Petitioner Francis Nemechek is serving five consecutive life sentences in the state prison in Lansing for five first-degree murders that he committed between December 1974 and August 1976.

On January 12, 1993, Nemechek and the Kansas Department of Corrections signed a "Program Agreement" where Nemechek agreed to participate in substance abuse treatment and a sex offender treatment program. Above Nemechek's signature on the agreement, he noted that he did not want to sign the agreement but was pressured to do so.

On March 23, 1995, David McKune, the warden at the Lansing prison, issued a memorandum stating that as of May 1, 1995, inmates on medium security status who refused to participate in recommended counseling programs would be moved to a more restrictive housing unit. On June 12, 1995, McKune issued another statement clarifying that inmates on medium security status who refused to participate in such programs would be placed on "unassigned for cause" (UAC) status for at least 90 days, making them ineligible for employment with incentive pay; such inmates would also be transferred to the maximum security unit of the prison for the duration of their UAC status.

In the meantime, in April 1995, Nemechek filed a prison grievance claiming that under *Payne v. Kansas Parole Board*, 20 Kan. App. 2d 301, 887 P.2d 147 (1994), requiring him to participate in such counseling programs was an ex post facto violation. Nemechek sought the deletion of the two treatment programs from the program agreement and an injunction prohibiting prison authorities from denying him good time credit or transferring him to a more restrictive environment for his refusal to participate in the treatment programs. McKune responded to Nemechek's grievance with a written statement that an inmate's future housing would be contingent on the inmate's future decisions regarding participation in recommended counseling programs. Nemechek appealed to the Secretary of Corrections, who affirmed McKune's actions.

Nemechek filed this habeas corpus action in district court maintaining that under *Payne*, requiring him to participate in the treatment programs was an ex post facto violation. Nemechek alleged that transferring him to a more restrictive prison environment for refusing to participate in counseling programs constituted punishment and the denial of a liberty interest subject to judicial scrutiny. Nemechek sought an injunction ordering McKune to remove the counseling programs from his program agreement and to refrain from placing him on UAC status for his refusal to participate in those treatment programs.

The district court found that placing Nemechek on UAC status for his refusal to participate in the counseling programs would be an ex post facto violation under *Payne*. The court further reasoned

the statute requiring completion of such programs as a condition of parole was passed after Nemechek committed his crimes. As such, the court ordered McKune not to take any action against Nemechek for his refusal to participate in the counseling programs. McKune appeals.

McKune argues the district court erred in granting Nemechek's requested relief because requiring Nemechek's participation in rehabilitative programs as a condition of his maintaining medium security status does not amount to a punishment or a penalty for ex post facto purposes. In *Lamb v. Kansas Parole Board*, 15 Kan. App. 2d 606, Syl. ¶ 8, 812 P.2d 761 (1991), this court said:

"Two critical elements must be present for a criminal or penal law to be ex post facto: It must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it. A criminal law disadvantages the offender if it punishes an act not punishable when committed, imposes additional punishment to that then prescribed, aggravates the crime, or alters the legal rules of evidence."

Recently, in *Lile v. Simmons*, 23 Kan. App. 2d 1, 3-4, 929 P.2d 171 (1996), this court concluded that a prison inmate lacked a sufficient liberty interest in his or her prison security status to implicate due process considerations so that the courts would not review prison authorities' decisions on such matters.

The issue here is whether the new prison policy of requiring inmates to participate in recommended counseling programs to maintain their medium security status is an ex post facto violation. Nemechek admits in his petition that because he is serving a life sentence, he is ineligible for good time credits. Thus, placement on UAC status could not possibly prejudice him with regard to good time credits.

In *Dominique v. Weld*, 73 F.3d 1156 (1st Cir. 1996), a habeas petitioner brought an ex post facto claim against Massachusetts prison authorities under circumstances extremely similar to the case at hand. The petitioner challenged a regulation requiring him to participate in a sex offender treatment program as a condition of placement in a prison security classification with associated privileges, including a certain prison work program. The *Dominique* court concluded the regulation did not amount to an increased

penalty for the petitioner's offense for ex post facto purposes but was merely an alteration in the administrative operation of the prison that attended to his prison sentence. 73 F.3d at 1163.

We conclude the security classification system that the inmate complains of here is an administrative function of the day-to-day operations of the prison. Reasonable application of a prison security classification system does not amount to increased punishment for an inmate's original offense. More specifically, where an inmate is ineligible for good time credits because he or she has been sentenced to life in prison, placing an inmate on unassigned for cause status for refusing to participate in recommended rehabilitation programs does not amount to an ex post facto increase in punishment for the inmate's crime of conviction.

Reversed.