No. 77,629

MARY BROWN, *Appellant,* v. THE KANSAS PAROLE BOARD AND RICHARD KOERNER, PRINCIPAL ADMINISTRATOR OF THE TOPEKA CORRECTIONAL FACILITY, *Appellees.*

(943 P.2d 1240)

Opinion filed July 18, 1997.

*Valerie L. Peterson*, of Topeka, argued the cause, and *Michael Kaye*, of Topeka, was with her on the brief for appellant.

*James W. Coder*, assistant attorney general, argued the cause, and *Carla J. Stovall*, attorney general, was with him on the brief for appellees.

The opinion of the court was delivered by

LARSON, J.: This is an appeal by Mary Brown from the trial court's denial of habeas corpus relief requested pursuant to K.S.A. 60-1501 after her parole had been revoked by the Kansas Parole Board (Board) due to her alleged assault on her husband with a butcher knife.

All of Brown's contentions on appeal relate to her procedural rights when her parole was revoked. Reduced to the essential arguments, Brown makes three claims: (1) The notice she received from the Board as to her right to be represented by counsel was inadequate; (2) she did not waive her right to appointed counsel; thus, the Board was required to determine if counsel must be appointed to protect her interests; and (3) her right to confront and cross-examine adverse witnesses was violated.

The rights of a parolee at a revocation hearing are not as extensive as Brown contends, nor as minimal as argued by the Board.

However, we are satisfied the trial court reached the proper result under the facts of this case. This requires the facts to be related in considerable detail for, although legal issues are involved, in the final analysis our decision turns on the factual findings made by the trial court after an evidentiary hearing.

*Factual background*

Brown pled guilty to one count of second-degree murder in Wyandotte County, Kansas, in 1981. She was sentenced to a term of 6 to 25 years and was incarcerated. After serving 12 years, Brown was granted parole in June 1993. The Missouri Parole Board agreed to supervise her so that she could live near her family in Kansas City, Missouri.

Brown was arrested in Kansas City, Missouri, in January 1995, after Richard Crawford, her husband, told the police that Brown had assaulted him. The police report indicated the pair had argued about another woman who had been in Crawford's car the previous day. Crawford reported that Brown had said, "I'll kill you for cheating on me" and had inflicted a deep laceration approximately 2 inches long and ¼ inch deep on the top of his left wrist with a butcher knife. Crawford later dropped the charges.

A Missouri parole officer filed a violations report. Brown told this officer she had swung the knife in order to prevent Crawford from having sex with her after she had refused him. The officer recommended parole revocation and stated in part:

"This officer is extremely concerned with Brown's potential for further violence. File material indicates the characteristics of Brown's violent behavior has not changed over the years. In 1959 Brown was sent to a Nebraska mental hospital for shooting a man she said had raped and insulted her. In 1969 she was charged in Arizona for Aggravated Assault with Intent to Kill. In 1980 file material states Brown stabbed a boyfriend, but he did not want to press charges. In 1981 Brown was charged with the present offense. Brown poses a serious threat to any man, when she is in a relationship with the man. This officer believes if Brown is allowed to remain in the community, she will attempt to seriously harm or kill again."

In May 1995, a preliminary hearing as required by *Morrissey v. Brewer*, 408 U.S. 471, 33 L. Ed. 2d 484, 92 S. Ct. 2593 (1972), was held before Brent Morris, of the Missouri Board of Probation and Parole. Morris reported that prior to the hearing he had spoken

with Brown's mother and ex-husband, who offered character references. Brown told Morris she could not read or write well but she could understand the proceedings.

In response to the charges, Brown said she had caught Crawford having sex with another woman in his car. She kicked him out of the house, but he came back the following night and tried to force her to have sex. Brown admitted swinging the knife to keep him away and stated Crawford was cut when he refused to withdraw from the path of the knife.

Morris found probable cause to believe Brown had violated the conditions of her parole. His report indicated behavior of an assaultive nature.

Brown was returned to Kansas custody. On May 31, 1995, the Kansas Department of Corrections (DOC) sent Brown a notice of a parole revocation hearing. Sandy Hashman, a correction counselor at the Topeka Correctional Facility (TCF), read the notice to Brown. Brown signed the notice, acknowledging it had been received and fully explained to her. Hashman testified at the habeas corpus hearing that the notice was read word for word, that Brown seemed to understand it, and that she had no questions regarding it.

The notice informed Brown there was probable cause to believe a parole violation had occurred and she would be given a hearing before the Board. She was told that she could speak on her own behalf at the hearing and invite witnesses to appear for her. She was also informed that she could request adverse witnesses. The notice directed her to complete an attached form in order to request or waive witnesses. The notice also stated: "You are entitled to legal counsel at the hearing." The notice went on to state that Brown would be notified of the Board's decision after the hearing. Brown completed the top portion of the witness request form and asked that Crawford be invited to attend.

The parole revocation hearing was held on June 14, 1995, before Marilyn Scafe, the chairperson of the Board. Hashman was present, along with Don Wegener, an institutional parole officer. Brown was not asked if she desired counsel, and she did not request representation. Crawford did not appear. Hashman and Wegener

explained to Brown that she could wait for another hearing date or that they could proceed without Crawford's presence. Brown modified her witness request form to indicate she waived the presence of Crawford so the hearing could continue.

Based on the Missouri parole report, the preliminary hearing report, and Brown's statements, the Board, acting through its chairperson, decided to revoke Brown's parole. Brown filed a written appeal to the entire Board, which was denied in January 1996.

Brown then filed her K.S.A. 60-1501 petition in the Shawnee County District Court, requesting a new parole revocation hearing on the ground that her right to confront witnesses had been violated. She also alleged the Board had violated her due process rights by failing to provide her with counsel.

The trial court held an evidentiary hearing on the habeas petition in July 1996. Scafe testified that Brown's parole was revoked "based on the police report, the preliminary hearing report, and the statements of Ms. Brown." Scafe opined that Brown understood the proceedings and stated, "I gave her options and she would respond, and the conversation seemed very normal to me." Scafe testified she did not offer Brown legal counsel and indicated to the court that the Board does not provide attorneys.

Hashman testified that Brown was not asked at the hearing if she wished to have counsel, but that she "represented herself to the best of her ability, as everybody else does." Hashman was aware that Brown could not read and stated most things were explained to her. Hashman said she had read the notice of the revocation hearing to Brown word for word. Hashman also testified she and Wegener had explained to Brown her right to have the revocation hearing continued because Crawford was not present, but said Brown had waived Crawford's presence by initialing her change of the witness request form. Hashman related that Brown questioned anything she did not understand, and when she was asked, "Does very much get by Mary Brown?", replied, "Nothing gets by Mary Brown."

Chris Patterson, previously a legal intern at the Washburn Law Clinic, testified that when he had interviewed Hashman, he had asked her if Brown could represent herself sufficiently. He stated

Hashman had answered, "No." A clinical evaluation update of Brown from 1990 was also admitted, indicating Brown had an IQ of 66, which is in the mildly retarded range. The evaluation showed she was functionally illiterate.

The trial court took the matter under advisement and in its written opinion specifically found that Brown had been given notice of the revocation hearing, which included her entitlement "to legal counsel at the hearing," as well as her right "to call witnesses." The court also found that "Petitioner signed this form acknowledging that 'the [notice] had been read and fully explained to me and I hereby acknowledge receipt of this Revocation hearing.' "

The trial court's opinion as to the issue of the claimed failure to inform Brown of her right to be represented by counsel quoted from the controlling United States Supreme Court case of *Gagnon v. Scarpelli*, 411 U.S. 778, 789, 36 L. Ed. 2d 656, 93 S. Ct. 1756 (1973). *Gagnon* held that a parolee in a revocation hearing has no "inflexible constitutional" right to have counsel appointed, but the appointment of counsel in such situations is to be determined "on a case-by-case basis in the exercise of a sound discretion by the state authority charged with responsibility for administering the . . . parole system." 411 U.S. at 790.

The trial court then focused on the wording of *Gagnon*, which stated counsel should be provided in cases where, after being informed of the right to request counsel, the "parolee makes such a request." 411 U.S. at 790. While recognizing Brown's "somewhat limited educational capacities," the trial court held the notice to be sufficient, and determined that in failing to request counsel, Brown "waived her right to the possible appointment of counsel."

The trial court listed its findings as "CONCLUSIONS OF LAW" and made what appears to be a negative finding when it held:

"Therefore, it is impossible for this court to affirmatively determine that Petitioner was unable to comprehend the 'single clause' in the Notice which advised Petitioner that she was '. . . . entitled to legal counsel at this hearing . . . .' In addition, the fact that the corrections officer was satisfied that petitioner understood what was read to her further supports the Court's determination that the

Notice sufficiently notified Petitioner of her right to request counsel at the hearing."

The trial court then recognized that the burden of proof in a habeas corpus action

" 'rest[s] squarely on the prisoner, and if he fails to sustain that burden, the courts will not interfere with the board's decision.' [Citation omitted.] In this case, to be successful Petitioner must establish that her constitutional rights have been violated by the procedure. The naked complaint that counsel was not furnished to a person with limited intelligence . . . is insufficient to carry this burden."

The trial court in effect concluded that Brown had failed to satisfy either the factual or legal burden which would require the writ to be granted.

Finally, the trial court paraphrased *Morrissey,* 408 U.S. at 480: "[R]evocation of parole is not part of a criminal prosecution, and thus the full panoply of rights due to a defendant in such proceeding does not apply to parole revocation hearings." The court also outlined the minimum due process requirements for a parole revocation hearing as listed in *Gagnon:*

"(1) written notice of the claimed violation;
"(2) disclosure to parolee of evidence against him;
"(3) opportunity to be heard in person and to present witnesses and documentary evidence;
"(4) right to confront adverse witnesses [if any are called];
"(5) a neutral and detached hearing body such as a traditional parole board;
"(6) a written statement by the fact-finders as to the evidence relied on and reasons for revoking parole."

See *Gagnon,* 411 U.S. at 786.

The court then decided: "A review of the record, indicates that the Parole Board afforded Petitioner all of the aforementioned due process requirements."

The trial court made no specific holding relating to Brown's claim that she was denied her right to confront and cross-examine adverse witnesses.

The writ was denied. Brown appeals, raising the issues discussed herein.

*Standard of review*

The trial court's decision is in part a negative finding, which indicates the party upon whom the burden of proof is cast did not sustain the requisite burden. On appeal, such a negative finding will not be disturbed absent proof of an arbitrary disregard of undisputed evidence or some extrinsic consideration such as bias, passion, or prejudice. *Mohr v. State Bank of Stanley*, 244 Kan. 555, 567-68, 770 P.2d 466 (1989). As to the findings of fact and conclusions of law made by the trial court, the function of an appellate court is to determine if the findings are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law. *Tucker v. Hugoton Energy Corp.*, 253 Kan. 373, Syl. ¶ 1, 855 P.2d 929 (1993). The first is a deferential standard of review, and the second involves conclusions of law based upon given facts. *Kansas Gas & Electric Co. v. Will Investments, Inc.*, 261 Kan. 125, 128, 928 P.2d 73 (1996). As to questions of law, our standard of review is unlimited. *Gillespie v. Seymour*, 250 Kan. 123, Syl. ¶ 2, 823 P.2d 782 (1991).

*Extent of relief that may be afforded*

Although Brown asks that we order the Board to place her on parole, we would not do so under any circumstances. The applicable rule under which we operate is found in *Lamb v. Kansas Parole Board*, 15 Kan. App. 2d 606, Syl. ¶ 3, 812 P.2d 761 (1991), where the Court of Appeals stated:

"As parole from confinement in a penal institution prior to serving all of an imposed sentence is a privilege, a matter of grace exercised by the parole board, an appellate court's review of the denial of parole is limited to whether the parole board complied with applicable statutes and whether its action was arbitrary and capricious. Neither the district court nor an appellate court has authority to substitute its discretion for that of the paroling authority by granting parole. If error is found in the board's interpretation and application of statutes, the case must be remanded to the parole board with instructions to conduct a proper hearing pursuant to the applicable statutes and make the proper findings."

In *Payne v. Kansas Parole Board*, 20 Kan. App. 2d 301, 307, 887 P.2d 147 (1994), the Court of Appeals again recognized that while habeas corpus is the appropriate procedure for reviewing decisions

of the Board, appellate review is limited to determining if the Board complied with the applicable statutes and whether its action was arbitrary or capricious.

We have no authority to order the restoration of Brown's parole status. At most, we have the power to remand the case to the Board for a new revocation hearing.

*Notice of right to counsel*

Brown argues the single statement in the notice she received "You are entitled to legal counsel at the hearing," is constitutionally insufficient. She contends the Board is required to further inform parolees of their right to appointed counsel and to make more detailed inquiries into parolees' possible defenses and their ability to present them at a hearing.

The Board argues Kansas law does not require the Board to appoint counsel and that this is codified in K.A.R. 45-9-2(f), which states: "Representation by legal counsel may be allowed at the discretion of the board and at the parolee's expense." The Board appears to further argue that *Johnson v. Stucker*, 203 Kan. 253, Syl. ¶ 1, 453 P.2d 35, *cert. denied* 396 U.S. 904 (1969), and *State v. LeVier*, 203 Kan. 626, Syl. ¶ 1, 455 P.2d 534, *cert. denied* 397 U.S. 949 (1970), which held there was no constitutional requirement for counsel to be present at parole revocation hearings and that "[a]n indigent prisoner has no constitutional or statutory right to court-appointed counsel upon a proceeding . . . before the state board of probation and parole," is still the law in Kansas. The Board's argument fails to recognize that *Morrissey*, 408 U.S. 471, and *Gagnon*, 411 U.S. 778, were decided in 1972 and 1973, subsequent to the *Johnson* and *LeVier* decisions, whose authority must be limited by the later clear statements by the United States Supreme Court. This was recognized by the trial court herein, which applied the tests of *Morrissey* and *Gagnon* in reaching its decision.

It is not controverted that Brown received and was read the notice of the parole revocation hearing. The finding that the notice was sufficient and that Brown understood this notice is essentially a negative finding, which is conclusive based on our stated standard

of review. If we were to hold otherwise, we would be required to retry the habeas corpus action.

While we will later discuss the issue of waiver of the right to counsel by the failure of the parolee to so request, we look briefly to the wording of *Gagnon,* 411 U.S. 778, for guidance regarding the Board's obligations in cases such as this.

Although Justice Douglas dissented and contended due process required the appointment of counsel, the other eight members of the United States Supreme Court in *Gagnon,* speaking through Justice Powell, expressed the view that the State was not under a constitutional duty to provide counsel for indigents in all probation or parole revocation cases, but that the decision as to the need for counsel must be made on a case-by-case basis in the exercise of sound discretion by the state authority charged with responsibility for administering the probation and parole system. *Gagnon* listed guidelines to be applied by those charged with conducting a revocation hearing in determining whether assistance of counsel is constitutionally necessary. The opinion specifically stated:

"Although the presence and participation of counsel will probably be both undesirable and constitutionally unnecessary in most revocation hearings, there will remain certain cases in which fundamental fairness—the touchstone of due process—will require that the State provide at its expense counsel for indigent probationers or parolees.

"It is neither possible nor prudent to attempt to formulate a precise and detailed set of guidelines to be followed in determining when the providing of counsel is necessary to meet the applicable due process requirements. The facts and circumstances in preliminary and final hearings are susceptible of almost infinite variation, and a considerable discretion must be allowed the responsible agency in making the decision. Presumptively, it may be said that counsel should be provided in cases where, after being informed of his right to request counsel, the probationer or parolee makes such a request, based on a timely and colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present. In passing on a request for the appointment of counsel, the responsible agency also should consider, especially in doubtful cases, whether the probationer appears to be capable of speaking effectively for himself. In every case in which a request for counsel at a preliminary or final

hearing is refused, the grounds for refusal should be stated succinctly in the record." 411 U.S. at 790-91.

We are required to follow and apply the rules set forth by the court in *Gagnon*. The Board may not ignore these requirements, nor may it promulgate or enforce a regulation such as K.A.R. 45-9-2(f) which fails to comply with them. The Board is obligated to redraft this regulation to ensure constitutional compliance.

The principal reason the trial court found the requirements of *Gagnon* had been satisfied was that Brown did not request counsel. At the revocation hearing, Brown appeared to have argued that she did not commit the alleged violation and there were substantial reasons making revocation inappropriate, although the issues were not complex or difficult to develop or present. The Board, however, simply exercised its discretion based on a record which showed a lifetime of violent actions and revoked Brown's parole in this case. The Board was not obligated to volunteer to appoint counsel in the absence of a request by Brown, and it is difficult to see how the presence of counsel would have resulted in a different determination under the facts of this case.

The issue before us is not whether K.A.R. 45-9-2(f) complies with the constitutional requirements set forth in *Gagnon*. The provisions of K.A.R. 45-9-2(f) are unduly restrictive and fail to implement the broad case-by-case testing guidelines of *Gagnon*. Notwithstanding this deficiency, Brown did not request counsel and no detriment to her was shown by the improper application of this regulation.

The trial court correctly concluded that the constitutional requirements of *Gagnon*, were not violated by the Board. The habeas corpus relief was properly denied.

*Board's duty to determine need for counsel*

The decision as to this issue is governed by the result we reached in the previous question. The trial court made what is in effect a negative finding that Brown failed to show her condition required further inquiry by the Board beyond the limited statement in the notice of the revocation hearing or that fundamental fairness required the Board to begin its hearing with an inquiry into the ques-

tion of providing Brown with counsel notwithstanding her failure to so request. *Gagnon* should not be read to require the Board to *sua sponte* begin each hearing with a determination of whether to appoint counsel in the absence of a request by the parolee who has been informed of the right to have counsel present at the hearing or in the absence of a clear showing the parolee did not understand the process. These factors are all contrary to the trial court's specific findings in this case, which are supported by substantial competent evidence provided by the testimony of Scafe and Hashman.

*Right to confront and cross-examine adverse witnesses*

There are no specific factual findings or legal conclusions from the trial court on this issue. Yet, it is clear from the record that Brown knowingly and affirmatively waived the presence of Crawford at the parole revocation hearing.

It is further clear that Brown made the point she wished to have made at the revocation hearing by Crawford's presence. During redirect examination of Hashman by Brown's counsel at the habeas corpus hearing, the following colloquy occurred:

"Q. When you informed her that Mr. Crawford was not present, did she state, 'It doesn't matter'?

"A. I don't know her exact words, but she conveyed to us that she was willing to proceed with the proceeding without Mr. Crawford there. She, I believe—I believe she said it wasn't so much Mr. Crawford she was wanting as documents of bringing up that those charges listed on that piece of paper have been dropped from Missouri. It wasn't a matter of Mr. Crawford himself, so much as documentation.

"MS. BOS: No further questions.

"THE COURT: Apparently believing if they had been dismissed that somehow would let her out of the proceeding?

"MS. HASHMAN: Right.

"THE COURT: Did she say anything that caused you to conclude that, or was that your impression?

"MS. HASHMAN: She had stated—well, she had stated to me that if those charges had been dropped, there shouldn't have been cause to be revocated.

"THE COURT: Rather common misconception; isn't it?

"MS. HASHMAN: Very much so."

This shows the information Brown wished to have developed by Crawford was in fact before the Board, although it did not have the result she had hoped for.

Parole revocation proceedings are such that it was not improper for the Board to consider the reports of persons in the parole and probation system, notwithstanding their failure to appear personally and provide testimony. The Board's presumption of regularity was not violated, and Brown's express waiver of Crawford's presence results in this issue having no merit.

Affirmed.