**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 26 2002**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

LUKE REED,

      Plaintiff - Appellant,

v.

DAVID R. McKUNE, Warden,
Lansing Correctional Facility;
CHARLES SIMMONS, Secretary of
Corrections,

      Defendants - Appellees.

No. 00-3255

---

**Appeal from the United States District Court**
**for the District of Kansas**
**(No. 98-CV-3418-JWL   )**

---

Jean K. Gilles Phillips, The Paul E. Wilson Defender Project, University of
Kansas School of Law, Lawrence, Kansas, for Plaintiff-Appellant.

Brian R. Johnson, Assistant Attorney General, Topeka, Kansas, for Defendants-
Appellees.

---

Before **KELLY** , Circuit Judge,   **McWILLIAMS** , Senior Circuit Judge, and
**LUCERO** , Circuit Judge.

---

**LUCERO**, Circuit Judge.

---

      Luke Reed, a Kansas state prisoner serving a life sentence for aggravated

kidnaping and rape, appeals the district court's grant of summary judgment to defendants on his 42 U.S.C. § 1983 claim for injunctive and monetary relief. He alleges that his constitutional rights have been violated by prison officials who have ordered him either to participate in Kansas's Sexual Abuse Treatment Program ("SATP" or "program") or suffer the revocation of certain prison privileges and the denial of parole. We reserved judgment on this case pending the Supreme Court's review of this Circuit's opinion in Lile v. McKune, 224 F.3d 1175 (10th Cir. 2000). In light of the Court's decision, McKune v. Lile, No. 00-1187, 2002 U.S. LEXIS 4206 (U.S. June 10, 2002) (plurality opinion), we conclude that there is no merit to his claims. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

## I

Reed was convicted in June 1982 of aggravated kidnaping and rape, for which he received sentences, respectively, of life imprisonment and fifteen years to life. He became eligible for parole in June 1997. While imprisoned, Reed worked his way from a Level I security designation to Level III, thus earning him privileges including higher wages, more spending money, and the ability to possess electronic equipment in his cell.

Upon reaching the Level III classification, Reed was ordered to participate in the prison's SATP. Among other things, the program requires an inmate to

disclose his sexual history, including the crime of which he was convicted, along with any uncharged sexual offenses. No confidentiality is accorded to these disclosures, the admissions may be used against the inmate in future criminal prosecutions, and any information provided that concerns a sexual offense against a minor must by statute be disclosed to the proper authorities. See Kan. Stat. Ann. § 38-1522. In addition, participants in the SATP are required to submit to polygraph and penile plethysmograph testing. Although Reed initially acquiesced to the order to join the program, he ultimately refused to participate—a decision that resulted in his automatic transfer to maximum security with a security classification of Level I and imposition of a number of attendant sanctions, including restrictions on visitation rights, prison-yard privileges, participation in prison organizations, and possession of personal property.

In June 1996, Reed filed a petition for a writ of habeas corpus in state district court, alleging that he was being forced to participate in the SATP in violation of his rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. The state district court dismissed the petition, and Reed withdrew his appeal of this decision before it could be resolved by the state appellate courts. In December 1998, Reed initiated the present § 1983 suit in federal district court, alleging (1) that requiring him to sign a document admitting guilt and detailing all past sexual experiences violated his Fifth Amendment

privilege against self-incrimination; (2) that his punishment for refusing to participate in the SATP violated his Fourteenth Amendment substantive and procedural due process rights; (3) that his punishment for refusing to participate in the SATP violated the Ex Post Facto Clause; and (4) that the use of penile plethysmograph testing would violate his Fourth Amendment right to privacy and his Fifth Amendment right not to incriminate himself. He prayed for both injunctive relief and monetary damages.

The district court granted summary judgment to defendants, and Reed now appeals.

## II

We review the district court's grant of summary judgment de novo, applying the same legal standards used by the district court. See Gunnell v. Utah Valley State Coll., 152 F.3d 1253, 1259 (10th Cir. 1998). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In reviewing a summary judgment motion, the court is to view the record "in the light most favorable to the nonmoving party." Thournir v. Meyer, 909 F.2d 408, 409 (10th Cir. 1990) (citation omitted).

**A**

Defendants argue that each of Reed's claims was previously raised in his state petition for a writ of habeas corpus, that each was adjudicated by the state district court, and that Reed is therefore barred under the principles of res judicata and collateral estoppel from re-asserting these claims in a § 1983 action in federal court. Although we do not agree in full with this argument, we conclude that the bulk of Reed's claims are barred on res judicata and collateral estoppel grounds.

Most, but not all, of the claims that Reed makes in the present § 1983 action were likewise made before the state district court in his petition for a writ of habeas corpus. Whether the doctrines of res judicata and collateral estoppel bar Reed's claims is an issue to be determined under Kansas law. "In determining whether a state court judgment precludes a subsequent action in federal court, we must afford the state judgment full faith and credit, giving it the same preclusive effect as would the courts of the state issuing the judgment." Rhodes v. Hannigan, 12 F.3d 989, 991 (10th Cir. 1993); see also 28 U.S.C. § 1738 (providing that state judicial proceedings "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken").

The doctrine of res judicata prohibits litigation of certain claims based on the resolution of an earlier action between the same parties. "Under res judicata,

a final judgment on the merits of an action precludes the parties . . . from relitigating issues that were or could have been raised in that action." Allen v. McCurry, 449 U.S. 90, 94 (1980). Under Kansas law, an issue is res judicata when there is a "concurrence" of four conditions: "(1) identity in the things sued for, (2) identity of the cause of action, (3) identity of persons and parties to the action, and (4) identity in the quality of the persons for or against whom the claim is made." Steele v. Guardianship & Conservatorship of Crist, 840 P.2d 1107, 1114 (Kan. 1992) (quotation omitted).[1]

The doctrine of collateral estoppel prevents a second litigation of the same issues between the same parties or those in privity with the parties. Under Kansas law, the requirements of collateral estoppel are:

---

[1] The Supreme Court of Kansas has explained the manner in which the "identity of the cause of action" may be ascertained:

> A fundamental test applied for comparing causes of action, for the purpose of applying principles of res judicata, is whether the primary right and duty, and delict or wrong, are the same in each action. Under this test, there is but one cause of action where there is but one right in the plaintiff and one wrong on the part of the defendant involving that right. . . . Two actions have also been regarded as being based on the same cause of action where the issues in the first action were broad enough to comprehend all that was involved in the issues of the second action, or where the two actions have such a measure of identity that a different judgment in the second would destroy or impair rights or interests established by the judgment in the first.

Wells v. Ross, 465 P.2d 966, 968 (Kan. 1970) (quotation omitted).

> (1) a prior judgment on the merits which determined the rights and liabilities of the parties on the issue based upon ultimate facts as disclosed by the pleadings and judgment; (2) the parties must be the same or in privity; and (3) the issue litigated must have been determined and necessary to support the judgment.

Kan. Pub. Employees Ret. Sys. v. Reimer & Koger Assocs., 941 P.2d 1321, 1344 (Kan. 1997) ("KPERS") (quotation omitted). The Supreme Court has specifically noted that the doctrine of collateral estoppel is applicable in the § 1983 context, because there is "no reason to believe that Congress intended to provide a person claiming a federal right an unrestricted opportunity to relitigate an issue already decided in state court." Allen, 449 U.S. at 104.

Reed's request for an injunction to prevent defendants from forcing him either to participate in the SATP or else forego a host of prison privileges has already been adjudicated in state court. We conclude that, to the degree Reed's request for such an injunction is premised on the alleged violation of his Fourteenth Amendment substantive and procedural due process rights, his Fourth Amendment right to privacy, or his Fifth Amendment right not to incriminate himself by submitting to polygraph and plethysmograph testing, the matter is res judicata and therefore not assertable in this action. Stated simply, the four conditions set forth by the Supreme Court of Kansas for applicability of the doctrine of res judicata have been met with respect to Reed's request for an injunction premised on these alleged constitutional violations.

-7-

Res judicata does not, however, bar Reed's claim for money damages based on the alleged violations enumerated in the above paragraph. To the contrary, we have previously held that under Kansas law the doctrine of res judicata does not preclude a § 1983 action for monetary damages when a prisoner's claims have previously been adjudicated in a state habeas corpus proceeding because habeas corpus and § 1983 actions are premised on different wrongs. See Rhodes, 12 F.3d at 991 (noting that a petition for habeas corpus "attacks the fact or duration of a prisoner's confinement and seeks the remedy of immediate release or a shortened period of confinement," while a civil rights action for damages pursuant to § 1983 "attacks the conditions of the prisoner's confinement and requests monetary compensation for such conditions" (citation omitted)). Nonetheless, because the requirements set forth by the Supreme Court of Kansas for collateral estoppel have been met with respect to the adjudication of these alleged constitutional violations, we conclude that Reed's claim for money damages premised on these wrongs likewise may not be asserted in this action.

**B**

A bit more complicated is Reed's request for an injunction and money damages premised on his Fifth Amendment right not to incriminate himself by being forced to confess guilt to his crime of conviction and by being forced to describe all past sexual experiences. Under Kansas law, even when an issue has

been actually litigated and there is a valid and final judgment of the issue, relitigation is not precluded when the issue is one of law and "a new determination is warranted to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws." KPERS, 941 P.2d at 1344; cf. Spradling v. City of Tulsa, 198 F.3d 1219, 1223 (10th Cir. 2000) ("The doctrines of collateral estoppel and res judicata . . . apply only in cases where controlling facts and law remain unchanged. Consequently, res judicata and collateral estoppel are inapplicable where, between the first and second suits, an intervening change in the law or modification of significant facts create new legal conditions." (citation omitted)).

A change in the relevant law was indisputably effected between the time of the disposition of Reed's state habeas claim and the pendency of his instant appeal of the federal district court's grant of summary judgment to defendants. In dismissing Reed's constitutional claims in the habeas proceeding, the state district court relied on a series of Kansas state cases, all of which held that the SATP did not violate a prisoner's constitutional rights. (See R. Doc. 19 Ex. A at 1.) Subsequently, however, we held on nearly identical facts in Lile v. McKune that "the policy that forces Plaintiff to choose between admitting incriminating information required for participation in the SATP and incurring the substantial and potent penalties that would be imposed if he refused to

participate is capable of forcing the self-incrimination which the [Fifth] Amendment forbids." 224 F.3d at 1189 (quotation omitted).

It is an interesting question whether a change in the relevant law that occurs after the initiation of a cause of action but before its ultimate resolution on appeal is sufficient to allow a party to avoid the shoals of collateral estoppel doctrine under Kansas law. Nevertheless, we conclude that this is a question we need not answer in light of the Supreme Court's reversal, in McKune v. Lile, of our holding that forced participation in the SATP violates the Fifth Amendment.

In his plurality opinion in McKune v. Lile, Justice Kennedy—joined by three other members of the Court—opined that

> [a] prison clinical rehabilitation program, which is acknowledged to bear a rational relation to a legitimate penological objective, does not violate the privilege against self-incrimination if the adverse consequences an inmate faces for not participating are related to the program objectives and do not constitute atypical and significant hardships in relation to the ordinary incidents of prison life.

2002 U.S. LEXIS 4206 at *27. Applying this standard, which is borrowed from the procedural due process analysis established by the Court in Sandin v. Conner, 515 U.S. 472, 484 (1995), the plurality determined that forcing an inmate to choose between participating in Kansas's SATP and losing prison privileges does not violate an inmate's privilege against self-incrimination. In her lone concurrence, Justice O'Connor agreed that forcing an inmate to make such an election is not compulsive, but she did not assent to the plurality contention that

-10-

the standard for ascertaining compulsion is the same as the due process standard set forth in Sandin. See id. at \*50 (O'Connor, J., concurring). Though Justice O'Connor's narrower position in her concurrence represents the holding of the plurality decision, see Marks v. United States, 430 U.S. 188, 193 (1977), the identity of material facts between Reed's and Lile's circumstances nonetheless requires us to conclude that Reed, too, has failed to show that defendants violated his constitutional rights by forcing him to choose between participation in the SATP and the revocation of his prison privileges.

## C

Reed's final claim—that he is entitled to an injunction and money damages because his refusal to participate in the SATP has resulted in his being denied parole in violation of his due process and ex post facto rights—was not adjudicated in state court because the denials of parole had not yet occurred. Defendants' res judicata and collateral estoppel arguments are therefore meritless with respect to this claim.

Pursuant to a statutory provision enacted by the Kansas legislature in 1988, the secretary of corrections must "enter into a written agreement with the inmate specifying those educational, vocational, mental health or other programs which the secretary determines the inmate must satisfactorily complete in order to be prepared for release on parole or postrelease supervision." Kan. Stat. Ann. § 75-

5210a(a). Under another provision enacted in 1988, the parole board may release on parole—with some exceptions not relevant in the present case—only those inmates for whom "the secretary of corrections has reported to the board in writing that the inmate has satisfactorily completed the programs required by any agreement entered under K.S.A. 75-5210a." Id. § 22-3717(g). If these provisions were applicable to Reed, who was convicted before their enactment, then successful completion of the SATP would be a prerequisite to his being released on parole. The Kansas Court of Appeals, however, has held that these provisions "do not apply retroactively," because such an application of the new provisions would violate the Ex Post Facto Clause. Payne v. Kan. Parole Bd., 887 P.2d 147, 150 (Kan. Ct. App. 1994); see also Lile v. McKune, 224 F.3d at 1182 (noting that, under Payne, inmates convicted prior to the 1988 enactment of §§ 75-5210a and 22-3717(g) are not required to enter into a program agreement in order to be eligible for parole). In light of the holding in Payne, Reed contends that his several denials of parole offend both the Due Process Clause and the Ex Post Facto Clause.

Reed has been denied parole three times since 1997. The reasons listed by the parole board for the first denial in its 1997 Action Notice were the "serious nature and circumstances of crime; history of crim [sic] acts; non-participation in programs" (Appellant's App. Attach. A at 8); the reasons listed for the second

-12-

and third denials, in 1999 and 2000, were the "[s]erious nature and circumstances of the crime, objections regarding parole" ( id. at 9, 10). Both the 1997 and 2000 Action Notices include a recommendation that Reed complete the SATP program. Also in the record is a "Parole/Release Eligibility Document," which accompanied the 1999 denial of parole and which states that Reed's "[o]verall progress has been satisfactory, except for the inmate still refusing [SATP]." ( Id. at 53.) Reed claims that this evidence raises a material issue as to whether he has repeatedly been denied parole "solely for his failure to participate in the SATP" in violation of his constitutional rights. (Appellant's Br. at 12.)

Reed seeks three separate forms of relief for this alleged violation: (1) an injunction ordering the Kansas parole board to release him on parole, (2) monetary damages stemming from the parole board's unconstitutional failure to have granted him parole thus far, and (3) an injunction requiring the parole board to c orrect constitutionally defective procedures in any future parole hearings. We address each request in turn.

The Supreme Court has held that "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his s ole federal remedy is a writ of habeas corpus." Preiser v. Rodriguez , 411 U.S. 475, 500 (1973). This requirement is applicable to a

challenge to a constitutional defect in an individual parole hearing where the remedy lies in providing a new parole hearing. Herrera v. Harkins, 949 F.2d 1096, 1097 (10th Cir. 1991). We therefore conclude that, with respect to Reed's request for an injunction that would effect his immediate or imminent release on parole, his claim is not cognizable under § 1983 and must instead be brought under 28 U.S.C. § 2241.

Reed's claim for money damages in federal court is likewise precluded. In Heck v. Humphrey, the Supreme Court held that

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

512 U.S. 477, 486–87 (1994) (footnote omitted). Because a judgment in favor of Reed would "necessarily imply the invalidity of his conviction or sentence," id. at 487, and because Reed has not "demonstrate[d] that the conviction or sentence has already been invalidated," id., we conclude that his claim for money damages is likewise not cognizable under § 1983. See also Edwards v. Balisock, 520 U.S. 641, 648 (1997) (holding that Heck is applicable to § 1983 suits premised on alleged violations of prison disciplinary procedures).

However, where a prisoner "seek[s] injunctive or declaratory relief to

-14-

correct constitutionally defective parole procedures, section 1983 remains available." Herrera, 949 F.2d at 1097–98. Because Reed contends that the parole board is improperly requiring him to complete the SATP in violation of the Due Process and Ex Post Facto Clauses, his action seeking injunctive relief to compel the board to abide by constitutionally acceptable procedures in the future is cognizable under § 1983.

"It is well-settled that the Due Process Clause shields from arbitrary or capricious deprivation those facets of a convicted criminal's existence that qualify as 'liberty interests.'" Harper v. Young, 64 F.3d 563, 564 (10th Cir. 1995), aff'd, 520 U.S. 143 (1997). An inmate's interest in participating in a state's parole program is one such liberty interest inhering directly in the Due Process Clause itself, and thus is not subject to deprivation without strict procedural safeguards. Id. Although certain deprivations of process impacting on parole decisions may be "too attenuated to invoke the procedural guarantees of the Due Process Clause," Sandin, 515 U.S. at 487, Reed's claim that he is being denied parole solely on the basis of his failure to participate in the SATP is not so attenuated. Cf. id. (holding that the effect of a misconduct record on the duration of an inmate's sentence was too attenuated even though it was a relevant consideration for parole). Reed's claim might, therefore, potentially state a due process violation.

To show a violation of the Ex Post Facto Clause, a prisoner must demonstrate that he has been subjected to a "penal or criminal law [that is] retrospective, and disadvantageous to the offender because it [imposes] greater punishment." Dyke v. Meachum, 785 F.2d 267, 268 (10th Cir. 1986) (per curiam) (quotation omitted). The law must "alter[] the definition of criminal conduct or increas[e] the punishment for the crime." Fultz v. Embry, 158 F.3d 1101, 1102 (10th Cir. 1998) (quotation omitted). Because the parole board's application of the 1988 statutory parole provisions to Reed's case would be retrospective and could impose an enhanced punishment for his crime, see Lynce v. Mathis, 519 U.S. 433, 445 (1997) (noting that retroactive alteration of parole or early release provisions can constitute an increase in punishment that implicates the Ex Post Facto Clause), we conclude that Reed might, in theory, be entitled to injunctive relief on ex post facto as well as due process grounds.

Nonetheless, we conclude that Reed has not, either before the district court or this Court, come forth with evidence sufficient to survive defendants' motion for summary judgment by demonstrating that there is a material factual dispute as to whether he has been denied parole solely on account of his nonparticipation in the SATP in violation of his due process and ex post facto rights. To the contrary, each of the parole board's Action Notices indicated that one of the reasons Reed was denied parole was the "serious nature and circumstances of

-16-

[his] crime." (Appellant's App. Attach. A at 8–9, 10.) Reed points to no evidence in the record demonstrating that the parole board has ignored the holding of <u>Payne</u> and denied him parole on the ground that Kan. Stat. Ann. § 22-3717(g) compelled that result. Construing the evidence in the light most favorable to Reed, we conclude that summary judgment for defendants on these claims was warranted.

## III

The district court's grant of summary judgment to defendants on Reed's claims is **AFFIRMED** .