**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 23 2005**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

JOHN KENNETH BOUTWELL,

      Plaintiff - Appellant,

      v.

FRANK KEATING, individually and in his official capacity as Governor of the State of Oklahoma; H. N. "SONNY" SCOTT; LARRY FIELDS, individually and in his former capacity as Director of the Oklahoma Department of Corrections; DREW EDMONDSON, Attorney General of the State of Oklahoma; JAMES SAFFLE, individually and in his official capacity as Director of the Oklahoma Department of Corrections; STEVEN HARGETT, individually and in his former capacity as Warden of Joseph Harp Correctional Center; SUSAN BUSSEY; CURRIE BALLARD; PATRICK J. MORGAN; FLINT BRECKINRIDGE; STEPHANIE SHAPELLE, and their successors individually and in their official capacities as members of the Oklahoma Pardon and Parole Board,

      Defendants - Appellees.

No. 03-6278

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D. Ct. No. 95-CV-1830-W)**

Micheal Salem, Salem Law Offices, Norman, Oklahoma, for the Plaintiff-Appellant.

J. Kevin Behrens, Assistant Attorney General (Charles K. Babb, Assistant Attorney General, on the brief), Office of the Attorney General, Oklahoma City, Oklahoma, for the Defendants-Appellees.

Before **TACHA**, Chief Circuit Judge, **KELLY**, and **McCONNELL**, Circuit Judges.

**TACHA**, Chief Circuit Judge.

Plaintiff-Appellant John Kenneth Boutwell was denied placement into Oklahoma's Pre-Parole Conditional Supervision ("PPCS") program. Alleging that this denial violated his constitutional rights, Mr. Boutwell seeks to challenge the state of Oklahoma's actions under 42 U.S.C. § 1983 or alternatively by petitioning for a writ of habeas corpus under 28 U.S.C. § 2254. The District Court dismissed Mr. Boutwell's action, finding that his claims were not cognizable under § 1983 and that his failure to allege facts sufficient to give rise to a constitutional violation similarly required dismissing his habeas petition. On appeal, Mr. Boutwell contends that the District Court erred in both regards. We take jurisdiction under 28 U.S.C. §§ 1291 and 2253, AFFIRM the ruling that Mr. Boutwell's claims are not cognizable under § 1983, GRANT a certificate of appealability, and AFFIRM the dismissal of Mr. Boutwell's habeas petition.

-2-

## I. BACKGROUND

Mr. Boutwell was convicted of first degree murder in 1978. His sentence was later commuted from death to life with the possibility of parole. This appeal, however, contests neither crime nor sentence. Instead, the appeal arises out of Mr. Boutwell's recommendation for, and subsequent denial of, PPCS placement.

PPCS was a program established under Oklahoma law. [1] Under that scheme, after a prisoner met certain eligibility requirements, the Oklahoma Pardon and Parole Board ("Parole Board") determined whether to recommend to the Department of Corrections ("DOC") that the prisoner be placed into PPCS. Such placement released a prisoner before the expiration of his sentence and allowed him to maintain a residence and job. In January 1995, the Parole Board voted to recommend Mr. Boutwell for entry into PPCS.

In response to this recommendation, Defendants Governor Frank Keating and Attorney General Drew Edmondson wrote letters to the Director of the DOC,

---

[1] Oklahoma's PPCS program was abolished in 1997. *See* Okla. Stat. Ann. tit. 57, § 365 (West 1997). We note, however, that Oklahoma currently has a similar program, called "specialized parole," in which inmates may be given supervised release prior to their parole date. In light of the District Court's "considerable discretion" in fashioning equitable remedies, *see Stichting Mayflower Recreational Fonds v. Newpark Resources, Inc.*, 917 F.2d 1239, 1245 (10th Cir. 1990), and because we conclude that Mr. Boutwell is not entitled to the relief he seeks, we assume without deciding that the District Court would have discretion to fashion an appropriate remedy—such as release on "specialized parole"—and therefore the abolition of PPCS does not moot this appeal.

Defendant Larry Fields. These letters requested that Director Fields delay Mr. Boutwell's admission into PPCS until newly-appointed Parole Board members could reconsider the case. Thereafter, Director Fields denied Mr. Boutwell's PPCS placement, citing the existence of "aggravating factors." In March 1995, the new Parole Board voted against recommending Mr. Boutwell for PPCS.

Mr. Boutwell originally initiated this action in November 1995. He brought suit under 42 U.S.C. § 1983, alleging that his denial of PPCS placement violated his constitutional rights, and sought placement in the PPCS program. The complaint was later amended to state that if the District Court determined that the action could not be maintained under § 1983, it should be construed as a habeas petition and stayed pending exhaustion in state court. In May 1999, the District Court adopted the Magistrate Judge's findings.

In November 2001, Mr. Boutwell filed an application to reopen these proceedings. He argued that he had exhausted all available state court remedies, and therefore wished to file a second amended complaint. His second amended complaint again sought relief under § 1983 and, in the alternative, a writ of habeas corpus. The District Court reopened the matter and referred it back to the Magistrate Judge. Before the Magistrate Judge, the Defendants moved to dismiss the § 1983 claims under Fed. R. Civ. P. 12(b)(6) and argued that the complaint should be construed as a habeas petition.

The Magistrate Judge issued a Report and Recommendation stating that because Mr. Boutwell sought placement into PPCS his claims were not cognizable under § 1983, but instead must be brought under habeas. The Magistrate Judge recommended that the District Court dismiss the § 1983 claims and treat the complaint as a habeas petition. The Magistrate Judge further recommended that, because the factual allegations—even if true—did not state a constitutional violation, Mr. Boutwell's petition for habeas corpus should be summarily dismissed under Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts ("Section 2254 Rules"). The District Court issued an Order adopting the Magistrate Judge's report, thereby dismissing Mr. Boutwell's § 1983 claims and his habeas petition. Mr. Boutwell timely appeals this decision.

On appeal, Mr. Boutwell presents two arguments. First, he argues that the District Court erred in determining that his suit was not cognizable under § 1983. Second, he argues that if his claims are properly construed as a habeas petition, we should grant a certificate of appealability and consider the merits of his claims. We consider these two arguments below.

## II.  SECTION 1983 RELIEF

A.  Standard of Review

The District Court dismissed Mr. Boutwell's § 1983 claims for failing to state a claim on which relief can be granted. We review a dismissal under Rule

12(b)(6) de novo and apply the same standard as the District Court. *County of Santa Fe v. Public Serv. Co. of New Mexico*, 311 F.3d 1031, 1034 (10th Cir. 2002).

B.    Availability of Remedy Under § 1983

Section 1983 permits suits against persons who, acting under the color of state law, deprive a United States citizen of his constitutional rights. *See* 42 U.S.C. § 1983. While Mr. Boutwell's claims fit this description, the Supreme Court has recognized that, despite the literal applicability of § 1983, some claims brought by prisoners are not cognizable under this statute. *See Heck v. Humphrey*, 512 U.S. 477, 481–82 (1994). Instead, for some claims that fall within the broad language of § 1983, a writ of habeas corpus is the exclusive federal remedy. *Id*.

In *Preiser v. Rodriguez*, 411 U.S. 475, 499 (1973), the Supreme Court recognized that its earlier decisions "establish that a § 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life . . . ." The Court, however, also noted that "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Id*. at 500.

As such, *Preiser* announced the Supreme Court's approach to determining whether a state prisoner can bring a claim under § 1983: A prisoner may use § 1983 to challenge the *conditions* of his confinement, but habeas corpus is the only avenue for a challenge to the *fact* or *duration* of confinement, at least when the remedy requested would result in the prisoner's immediate or speedier release from that confinement. Therefore, to determine whether Mr. Boutwell may proceed under § 1983, we must first decide whether Mr. Boutwell's claim—namely, that he was unconstitutionally denied placement in PPCS—is properly viewed as challenging the conditions of his confinement or the fact or duration of his confinement.

Because a prisoner's claim necessarily challenges the fact or duration of confinement when the remedy sought is the immediate or speedier release from confinement, such a claim must be brought under habeas. But habeas is not limited to those claims that, if successful, would lead to the prisoner's *unconditional* release from confinement. In a challenge to a parole denial, we recently held that an inmate's "request for an injunction that would effect his immediate or imminent *release on parole* . . . [is] not cognizable under § 1983 and must instead be brought under [habeas]." *Reed v. McKune*, 298 F.3d 946, 953 (10th Cir. 2002) (emphasis added). Therefore, if Mr. Boutwell's request for immediate placement into Oklahoma's pre-parole program is akin to a request to

-7-

be released on parole, Mr. Boutwell must proceed under habeas rather than § 1983.

In light of *Reed*, Mr. Boutwell argues that PPCS placement is distinguishable from parole. He contends that PPCS participants are still serving their sentences while parolees have their sentences suspended. He characterizes his suit as "bring[ing] a challenge to the conditions of [his] confinement, *i.e.*, whether they should be in a medium security facility or under the minimal security provisions of PPCS." Because a challenge to a transfer from one security level to another or from one prison to another is cognizable under § 1983, treating PPCS as minimum-security confinement rather than release on parole would permit Mr. Boutwell's suit to proceed under § 1983. *See Meachum v. Fano*, 427 U.S. 215, 218, 222–23 (1976) (permitting a § 1983 suit by prisoners challenging a transfer from a prison with both medium- and maximum-security facilities to an entirely maximum-security prison with less favorable living conditions). We disagree with Mr. Boutwell's characterization of his claim.

An inmate's denial of PPCS placement is analogous to a denial of parole for purposes of determining whether the inmate may file suit under § 1983 or must petition for a writ of habeas corpus. Our conclusion is supported by *Harper v. Young*, 64 F.3d 563 (10th Cir. 1995), *aff'd*, 520 U.S. 143 (1997), in which we analyzed whether PPCS should be treated as parole or minimum-security

confinement in the context of determining whether PPCS placement creates a liberty interest under the Fourteenth Amendment's Due Process Clause. 64 F.3d at 564.

In *Harper* , we noted that due process protections apply to the revocation of parole. *Id.* (citing *Morrissey v. Brewer* , 408 U.S. 471 (1972)). Attempting to distinguish pre-parole from parole, the State of Oklahoma argued that PPCS placement should be likened to a transfer to minimum security. *See id.* at 565 ("The State contends that, similarities to parole notwithstanding, placement in [PPCS] does not effect release from the custody of the [DOC] and is, therefore, merely a change in the degree or situs of an inmate's confinement."); 520 U.S. at 148 (noting that the petitioners argue that removal from PPCS should be controlled by *Meachum* because it was a transfer to a higher degree of confinement). We disagreed with the State's position, however, and held that PPCS placement creates a liberty interest in much the same way as release on parole. *See Harper* , 64 F.3d at 566–67 (holding that "a prisoner release program which permits a convict to exist, conditionally, in society on a full-time basis more closely resembles parole or probation than even the more permissive forms of institutional confinement"); *Harper* , 520 U.S. at 145 (holding that PPCS "differed from parole in name alone").

Of course, our decision to analogize PPCS placement to parole in one

setting does not necessarily imply that we must do so in a different context. The liberty interest inquiry undertaken in *Harper*, after all, required us to interpret the Fourteenth Amendment's Due Process Clause, whereas the issue before us—determining the scope of § 1983—involves a matter of statutory interpretation. Despite this difference, we conclude that the basis for analogizing PPCS to parole in the liberty-interest context is equally persuasive with respect to determining whether Mr. Boutwell's claim is cognizable under § 1983.

In *Harper*, we reasoned that PPCS placement, like release on parole, creates a liberty interest because it releases a prisoner from incarceration and because such release does more than "simply alter the degree of confinement." *Harper*, 64 F.3d at 566. Indeed, we emphasized that placement in PPCS constitutes "a fundamental change" to the confinement itself. *Id.* Affirming our decision, the Supreme Court took a similar stance, equating parole and preparole and noting that a parolee has a liberty interest in remaining on parole because life as a parolee "is very different from that of confinement in a prison." *Harper*, 520 U.S. at 147–48 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). Both this Court and the Supreme Court found a liberty interest in PPCS placement because it, like release on parole, differs significantly from being confined within the walls of prison. That is to say, PPCS placement secures the type of release from physical custody that cannot be characterized as a slight variance in the

-10-

circumstances of confinement.

This rationale similarly applies to the question we now face. We conclude, then, that the fundamental change that results from PPCS placement is not only sufficient to create a liberty interest but also makes a request for placement in PPCS a challenge to the fact, rather than to a condition, of an inmate's confinement. Therefore, Mr. Boutwell must proceed under habeas—not under § 1983.

### III. HABEAS CORPUS RELIEF

After determining that Mr. Boutwell's claims were not cognizable under § 1983, the District Court construed his complaint as a habeas petition. The District Court then summarily dismissed his petition pursuant to Section 2254 Rule 4. [2] On appeal, Mr. Boutwell again argues that if his claims are not cognizable under § 1983, we should similarly construe his suit as a habeas petition. Because his claims cannot be brought under § 1983, we now consider his claim as a petition for a writ of habeas corpus.

---

[2]Because Mr. Boutwell challenges the execution of his sentence, he seeks habeas relief under 28 U.S.C. § 2241. *See Montez v. McKinna*, 208 F.3d 862, 865 (10th Cir. 2000) (noting that an "action is properly brought under § 2254 as a challenge to the validity of [the prisoner's] conviction and sentence or pursuant to § 2241 as an attack on the execution of his sentence."). The District Court, however, acted within its discretion by applying the Section 2254 Rules to this § 2241 petition. *See* Section 2254 Rule 1(b) ("In applications for habeas corpus in cases not covered by [§ 2254], these rules may be applied at the discretion of the United States district court.").

-11-

Before considering the merits of his habeas petition, however, we must determine whether to grant a certificate of appealability ("COA"). A COA can only issue "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To meet this standard, a petitioner must demonstrate "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Because the District Court summarily dismissed Mr. Boutwell's habeas petition under Section 2254 Rule 4, we will grant a COA only if reasonable jurists could disagree with the District Court's application of Rule 4 to the claims in this petition.

Rule 4 requires a district court to dismiss a habeas petition "[i]f it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief." Section 2254 Rule 4. The District Court determined that Mr. Boutwell's petition should be dismissed under Rule 4 because the facts alleged in the petition even if true fail to establish a constitutional violation.

We conclude that the District Court properly interpreted Section 2254 Rule 4 to require dismissing a habeas petition that fails to allege facts that state a constitutional violation. *See Davis v. Franzen*, 671 F.2d 1056, 1057 (7th Cir.

-12-

1982) (holding that summary dismissal under Rule 4 is appropriate "unless the factual allegations in the petition, if true, would show that the petitioner is being held in custody in violation of the Constitution or laws of the United States."). Because we conclude that reasonable jurists could disagree with the District Court's application of Section 2254 Rule 4, we grant Mr. Boutwell's request for a certificate of appealability and now consider the merits of his habeas claims.

Because Mr. Boutwell's habeas claims were dismissed pursuant to Section 2254 Rule 4, we review his claims de novo. *See Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004); *O'Bremski v. Maass*, 915 F.2d 418, 420 (9th Cir. 1990)). We consider both his due process and ex post facto claims below.

A. <u>Due Process Violation</u>

Mr. Boutwell argues that he was denied placement into the PPCS program without due process in violation of the Fourteenth Amendment. In order to establish a due process violation, Mr. Boutwell must first demonstrate that he has been deprived of a constitutionally-protected liberty or property interest. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972) ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."). Mr. Boutwell does not argue that he has a property interest in PPCS placement. As such, we focus our analysis on Mr. Boutwell's liberty interests.

A PPCS participant has a liberty interest in any situation in which a parolee would have a liberty interest. *Cf. Harper*, 520 U.S. at 147–49 (recognizing a liberty interest in PPCS participation by comparing PPCS to a prisoner's liberty interest in parole). Parolees have two sources of liberty interests: A liberty interest may "inhere in the Due Process Clause" or it may be "created . . . by state law." *See Harper*, 64 F.3d at 564. The first step in analyzing Mr. Boutwell's due process argument, therefore, is to determine whether the liberty interest he claims is inherent in the Due Process Clause or created by state law.

    1. <u>Liberty Interests Inherent in the Due Process Clause</u>

Mr. Boutwell argues that once he was recommended for PPCS placement, he possessed a constitutional liberty interest in the expectancy of PPCS placement. It is true that a PPCS *participant* has a liberty interest inherent in the Due Process Clause in continued participation in the program. *Harper*, 64 F.3d at 565–66. In *Harper*, however, the PPCS participant was released from confinement, 520 U.S. at 146, whereas Mr. Boutwell never was an actual participant in PPCS. The question whether a petitioner has a liberty interest arising from the Due Process Clause itself, therefore, turns on whether a liberty interest is created when the petitioner is recommended for PPCS or when he is actually released from confinement.

In *Harper*, we determined the point at which the constitutionally-created

-14-

liberty interest arose. We recognized "the dispositive characteristic that marks that point at which the Due Process Clause itself implies a liberty interest: it is the fact of release from incarceration." 64 F.3d at 566. In choosing this event, we reasoned:

> The liberty associated with life outside the walls of a penal facility dwarfs that available to an inmate. . . . The passage outside the walls of a prison does not simply alter the degree of confinement; rather, it works a fundamental change in the *kind* of confinement, a transformation that signals the existence of an inherent liberty interest.

*Id*.

Our conclusion is supported by the Supreme Court's decision in *Harper*. The Supreme Court based its decision on the fact that while participating in PPCS, Mr. Harper "kept his own residence; he sought, obtained, and maintained a job; and he lived a life generally free of the incidents of imprisonment." *Harper*, 520 U.S. at 148. Because these factors can only occur once the inmate has been released from incarceration, the Supreme Court's reasoning is consistent with our determination that an inherent liberty interest arises upon release from prison.

We conclude, then, that a liberty interest inherent in the Due Process Clause arises upon an inmate's release from confinement. Because Mr. Boutwell's petition does not allege that he was released from confinement under PPCS—in fact, it concedes that he was *not* released—he has failed to allege facts necessary to create an inherent constitutional liberty interest.

-15-

2. <u>Liberty Interests Created by State Law</u>

Mr. Boutwell also argues that once he was recommended for PPCS placement, Oklahoma law created a liberty interest based on his expectancy of release under PPCS. The Supreme Court has held that a state's parole statute can create a liberty interest in the expectancy of parole. *See Bd. of Pardons v. Allen*, 482 U.S. 369, 381 (1987); *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex*, 442 U.S. 1, 12 (1979). Specifically, a state parole statute can create a liberty interest when the statute's language and structure sufficiently limits the discretion of a parole board. *See Allen*, 482 U.S. at 377–78 (determining that a parole statute created a liberty interest in the expectancy of parole by its use of mandatory language); *Greenholtz*, 442 U.S. at 11–12 (same); *cf. Jago v. Van Curen*, 454 U.S. 14, 20–21 (1981) (holding that no liberty interest in the expectancy of parole is created under a statute in which the parole decision is discretionary).

In *Greenholtz*, for example, the parole statute stated that an inmate "shall" be paroled "unless" one of four exceptions applied. 442 U.S. at 11. Similarly, in *Allen*, the statute stated that "[s]ubject to the following restrictions, the board shall release on parole" any eligible inmate. 482 U.S. at 376. Under both statutes, then, the use of mandatory language severely limited the discretion of the parole board to deny parole. In each case, the board was limited to determining

-16-

whether an exception applied, and if none applied, it was required to grant parole. This lack of parole board discretion was held to be sufficient to create a liberty interest in the expectancy of parole. *See Allen*, 482 U.S. at 378; *Greenholtz*, 442 U.S. at 12.

In *Sandin v. Conner*, 515 U.S. 472, 481 (1995), the Supreme Court stated that "the search for a negative implication from mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause." The Court held that state-created liberty "interests will be generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*.

The *Sandin* Court noted that this change in methodology did not require it to overrule any of its previous decisions. *Id*. at 483 n.5. This decision, however, did not resolve whether a parole statute that meets the *Greenholtz* and *Allen* test for creating a liberty interest necessarily satisfies *Sandin* or whether *Sandin* imposes an additional obligation. Because we conclude that Oklahoma's PPCS statute does not contain the mandatory language necessary to create a liberty interest under *Greenholtz* and *Allen*, we do not reach this question.

With this in mind, we now turn to Oklahoma's PPCS statute. The Oklahoma statute reads:

-17-

> Upon favorable recommendation by the Pardon and Parole Board, notification shall be made to the Department of Corrections that said inmate has been recommended to be placed in this program. Prior to the placement of an inmate on Preparole Conditional Supervision, the Department shall provide written notification to the . . . county in which any person on Preparole Conditional Supervision is to be placed.

Okla. Stat. tit. 57, § 365(C), (D) (1995).

We interpret this statute to make PPCS placement a two-step process. The Parole Board must first recommend an inmate for placement into PPCS, and the DOC may then place the inmate. Until both steps are completed, an inmate has not been accepted into PPCS. Furthermore, the statute does not place any limitations on the factors that the Parole Board can consider in making its decision whether to recommend an inmate or on the DOC's decision to place the inmate in PPCS.

Oklahoma's PPCS statute is therefore easily distinguished from the statutes in both *Greenholtz* and *Allen*. In these cases, the Supreme Court held that an expectancy of parole was created by the mandatory language contained in the statutes: Both statutes stated that an inmate "shall" be paroled unless certain conditions were met. *Greenholtz*, 442 U.S. at 11–12; *Allen*, 482 U.S. 377–78. Oklahoma's PPCS statute is not similarly worded. PPCS placement is conditioned upon the recommendation by the Parole Board, and while the statute places restraints on eligibility for PPCS placement, it in no way limits the Parole

Board's discretion as to which of the eligible inmates should be recommended. This statute therefore fails to create a liberty interest in the expectancy of PPCS placement.

Mr. Boutwell concedes that the PPCS statute grants discretion to the Parole Board. He argues, however, that once the Parole Board recommends a prisoner for placement into PPCS, it has exercised its discretion. Once this discretionary step has been taken, Mr. Boutwell argues, the rest of the PPCS statutory scheme allows for no discretion and therefore resembles the statutes at issue in *Greenholtz* and *Allen*. In other words, Mr. Boutwell argues that once the Parole Board recommended him for PPCS placement, the DOC had no discretion to deny that placement, and a liberty interest was therefore created. We disagree.

The statute states that the Parole Board only gives a "recommendation" to the DOC regarding an inmate's placement into PPCS. The term "recommend" loses its plain meaning if we do not interpret it to grant the DOC the discretion to accept it or reject it. The Parole Board's vote cannot be a "recommendation" and also be the final decision on PPCS placement.

Mr. Boutwell argues that we should not interpret "recommendation" literally. He argues that a literal interpretation would allow the DOC to assume the Governor's role in the parole process. Oklahoma law, however, creates separate "recommendation" processes for parole and PPCS. A parole

"recommendation" is made by the Parole Board to the governor. *See* Okla. Const. art. VI, § 10 (establishing the Parole Board and empowering it to "make its recommendations to the Governor of all deemed worthy of clemency"). A PPCS "recommendation" is made by the Parole Board with notification given to the DOC. Okla. Stat. tit. 57, § 365(C) (1995). Oklahoma law therefore creates no role for the DOC with respect to a parole recommendation nor for the governor with respect to a PPCS recommendation. Consequently, both provisions can be given their plain meaning without interfering with either the parole or PPCS recommendation process.

Finally, Mr. Boutwell argues that the DOC lacks discretion because the statute does not expressly grant it discretion. Although it is true that the statute does not expressly grant discretion, the PPCS statute also does not place any limitations on the DOC's ability to deny PPCS placement. The statute simply does not address the DOC's placement decision. In both *Greenholtz* and *Allen*, however, the lack of discretion is established by the presence of mandatory language—not inferred from statutory silence. Furthermore, as we noted above, the term "recommendation" would lose its plain meaning if we adopted Mr. Boutwell's construction.

Although the PPCS statute does not limit the DOC's discretion, its discretion is limited by the DOC Policy and Operations Manual ("Operations

-20-

Manual"). The Operations Manual provides guidance for the DOC's placement decision by establishing the process under which an inmate recommended by the Parole Board gets placed into PPCS. The manual requires the inmate to submit an "application packet" to the DOC within ten days of the Parole Board's recommendation. It also contains a section entitled "Placement Criteria." This section includes five factors, including whether the inmate has been medically cleared or has any detainers for felony prosecutions, which must be considered prior to PPCS placement. It also states that "[k]nowledge of aggravating circumstances may be considered in placement decisions."

Although the DOC Operation and Policy Manual narrows the DOC's discretion, it does not completely limit it. Unlike the statutes in *Greenholtz* and *Allen*, which required an inmate's release unless a specified exception is satisfied, the Operations Manual is not similarly structured. Instead, the Operations Manual contains certain requirements that must be met before an inmate may be placed into PPCS. No requirement, however, can be construed as a guideline that, if met by the inmate, requires the DOC to place him into PPCS. The Operations Manual therefore assists the DOC in determining whether to place an inmate on PPCS, but it does not sufficiently restrict the DOC's discretion such that a liberty interest is created under *Greenholtz* and *Allen*.

We therefore conclude that Mr. Boutwell does not possess a liberty interest

-21-

created by state law. Because Mr. Boutwell has failed to allege facts that are sufficient to create a liberty interest inherent in the Due Process Clause or created by state law, he cannot establish a due process violation.[3] We therefore affirm the District Court's summary dismissal of this claim.

B. Ex Post Facto Violation

Next, Mr. Boutwell argues that his continued confinement violates the Ex Post Facto Clause because his denial of PPCS placement was based on an impermissibly retroactive change in executive policy. The Ex Post Facto Clause prohibits states from passing laws that retroactively alter the definition of crimes or increase the punishment for criminal acts. *See* U.S. Const. art. I, § 10; *Powell v. Ray*, 301 F.3d 1200, 1203 (10th Cir. 2002). While this clause generally applies to legislative changes, we have extended its prohibitions to agency regulations that are legislative in nature. *See Smith v. Scott*, 223 F.3d 1191, 1193–94 (10th Cir. 2000) (holding that Ex Post Facto Clause applies to agency rule because a legislative body "cannot escape the Constitutional constraints on its power by delegating its lawmaking function to an agency.") (quotations and citation omitted). Some courts have even suggested that an executive order may violate the Ex Post Facto Clause. *See, e.g.*, *Lee v. Governor of New York*, 87 F.3d 55,

---

[3]We do not need to consider the arguments made on appeal concerning the sufficiency of the process given to Mr. Boutwell because we have not recognized any liberty interest of which he has been deprived.

59–60 (2d Cir. 1996); *United States v. Arch Trading Co.*, 987 F.2d 1087, 1095 (4th Cir. 1993). In any event, it is clear that courts only extend the Ex Post Facto Clause to government actions that have the force of law.

Mr. Boutwell claims that Governor Keating's statement that neither Mr. Boutwell nor any other violent felon will be released on parole violates the Ex Post Facto Clause. This statement, however, was not an executive order and did not otherwise have the force of law. Instead, Mr. Boutwell's petition cites newspaper articles to establish Governor Keating's views on early release of convicted murderers. Because his ex post facto claim fails to mention any change in legislation or regulation, but instead rests solely on statements made to the press, Mr. Boutwell has failed to allege facts that could establish a violation of the Ex Post Facto Clause. As a result, we affirm the District Court's summary dismissal of this claim.

## IV. CONCLUSION

We conclude that Mr. Boutwell's claims are not cognizable under § 1983 and AFFIRM this part of the judgment. We therefore interpret Mr. Boutwell's complaint as a petition for a writ of habeas corpus, GRANT issuance of a COA, and AFFIRM the District Court's dismissal of his habeas petition.